**Lewis Roca Rothgerber Christie LLP**
201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595
Telephone: 602.262.5311

**Kyle W. Kellar** (Admitted *Pro hac vice*)
Direct Dial: 626.683.4590
Direct Fax: 626.577.8800
Email:  kkellar@lewisroca.com

**Ryan D. Pont** (State Bar No. 033391)
Direct Dial: 602.262.5313
Direct Fax: 602.734.3769
Email: rpont@lewisroca.com

*Attorneys for Plaintiff wavve Americas, Inc.*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Wavve Americas, Inc., a Delaware corporation,<br><br>　　　　　　　Plaintiff,<br><br>　vs.<br><br>Unknown Registrant Of dramanice.la;<br>Unknown Registrant Of runasian.net;<br>Unknown Registrant Of watchasia.to;<br>Unknown Registrant Of asianwiki.co;<br>Unknown Registrant Of dramacool.bg;<br>Unknown Registrant Of dramacool.com.tr;<br>Unknown Registrant Of dramacool.com.vc;<br>Unknown Registrant Of dramacool9.co;<br>Unknown Registrant Of dramacool.tr;<br>Unknown Registrant Of dramacool.co.ba;<br>Unknown Registrant Of dramacool.ba;<br>Asian C, an individual;<br>Najeeb Ullah, an individual; and<br>Minh Van Ngoc Mym, an individual,<br><br>　　　　　　　Defendants. | Case No. CV24-02667-PHX-ESW<br><br>**PLAINTIFF'S *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER AND, UPON NOTICE AND HEARING, MOTION FOR PRELIMINARY INJUNCTION**<br><br>**[ORAL ARGUMENT REQUESTED]** |

**I.      INTRODUCTION**

　　　　Plaintiff wavve Americas, Inc. ("Plaintiff" or "wA"), by and through its attorneys, hereby moves the Court for an *Ex Parte* temporary restraining order, and a preliminary injunction upon notice and hearing, against Defendants Unknown Registrants of DRAMANICE.LA,      RUNASIAN.NET,      WATCHASIA.TO,      ASIANWIKI.CO,

126119779.2

DRAMACOOL.BG, DRAMACOOL.COM.TR, DRAMACOOL.COM.VC, DRAMACOOL9.CO, DRAMACOOL.TR, DRAMACOOL.CO.BA and DRAMACOOL.BA, Asian C, the registrant of ASIANC.SH, Najeeb Ullah, the registrant of DRAMACOOL.COM.SO, and Minh Van Ngoc Mym, the developer of DRAMACOOL - KDRAMA VIDEO MOVIE (collectively, "Defendants"), requiring them to disable public access to the Domain Names of DRAMANICE.LA, RUNASIAN.NET, WATCHASIA.TO, ASIANC.SH, ASIANWIKI.CO, DRAMACOOL.BG, DRAMACOOL.COM.TR, DRAMACOOL.COM.SO, DRAMACOOL.COM.VC, DRAMACOOL9.CO, DRAMACOOL.TR, DRAMACOOL.CO.BA and DRAMACOOL.BA (collectively, the "Domain Names"), the digital application, DRAMACOOL - KDRAMA VIDEO MOVIE (the "DRAMACOOL APP"), and any social media pages that promote and advertise infringing content available on any of the Domain Names or the DRAMACOOL APP.

An *ex parte* temporary restraining order, and a preliminary injunction upon notice and hearing, is necessary to protect wA's substantial Intellectual Property rights and business interests that Defendants have systemically and continuously undermined through their widespread infringing conduct. In fact, to frustrate copyright enforcement efforts, the infringing content available on various of the Domain Names is being regularly moved to slightly altered versions of these Domain Names and these new domain names are further being published on social media and other, related domain names such that the infringements can continue nearly unabated despite takedown orders. (wA's Complaint filed on October 3, 2024 ["Complaint"] [Dkt. No. 1], 15:45–17:49). Moreover, the DRAMACOOL APP continues to show infringing content while its developer repeatedly ignores several attempts by Apple Inc. ("Apple") and wA's counsel to contact them regarding the same. (*Id.* at 21:67–22:70). Due to Defendants' attempts to confound detection and non-responsiveness, wA brings this Motion to prevent the substantial, increasing, and irreparable harm to wA's reputation and business[1].

---

[1] In a separate action by wA against the owners of several other domain names infringing wA's exclusive intellectual property rights, wA's request for an *Ex Parte* Temporary Restraining Order, (attached as Exhibit C to the Declaration of Kyle Kellar in support of this Motion attached hereto)

## II. STATEMENT OF FACTS

### A. wA's KOCOWA® Service and Exclusive Rights in Copyrighted Works

wA is the leading distributor of Korea-originating television programming and feature films in the United States, which it streams to viewers through its popular KOCOWA® service. (Dkt. No. 1, 8:27–9:32). wA licenses media content from, *inter alia*, the three largest broadcast networks in Korea—Korean Broadcasting System (KBS), Seoul Broadcasting System (SBS), and Munhwa Broadcasting Corporation (MBC).[2] (*Id.* at 9:30). wA is currently the exclusive licensee of the United States distribution rights to over 1,300 different programs owned by, *inter alia*, KBS, SBS, and MBC (the "copyrighted Works"), which it distributes (*i.e.*, streams) via its KOCOWA® service. (*Id.*). The copyrighted Works are first published in Korea and are later made available on wA's KOCOWA® service for viewing in the United States. (*Id.* at 8:29). wA generates revenue by a combination of placing ads in free video streams and by charging users a recurring subscription fee for ad-free video streams. (*Id.* at 9:32).

### B. Defendants' Infringement of the Copyrighted Works

Without authorization from wA or the copyright owners, Defendants have been and continue to distribute unauthorized copies of many of the copyrighted Works via the Domain Names and the DRAMACOOL APP (Dkt. No. 1, 9:33–14:44). Upon reaching the webpages that resolve from the Domain Names, users can select from a wide variety of media content, including TV shows and movies, for viewing entirely free of charge, many of which are exclusively licensed to wA for distribution in the United States, including the copyrighted Works. (*Id.* at 10:34). Further, users of the DRAMACOOL APP can similarly select from a wide variety of infringing content, directly via this digital application available for download on Apple's App Store. (*Id.* at 14:41–15:44).

---

against the registrants of these domain names was granted under similar circumstances, where some of the registrants similarly either redacted or used a privacy service to mask their identities. *Wavve Americas, Inc. v. Unknown Party et. al.*, No. CV-24-02071-PHX-DWL, (D. Ariz. Sept. 9, 2024), Dkt 24 at pg. 10.

[2] wA is a joint partnership between Content Wavve, SK Telecom, KBS, MBC, and SBS. (https://corp.kocowa.com/who-is-wa/); (Dkt. No. 1, 8:27.)

Exhibit I to the Complaint lists only some examples of Korea-originating television shows exclusively licensed to wA for distribution in the United States that are available, without permission, on each of the Domain Names. (Dkt. No. 1, 18:52). A complete list of programs owned exclusively licensed to wA for distribution in the United States as of July 30, 2024 is attached as Exhibit F to the Complaint. (*Id.* at 9:30).

Additionally, to frustrate enforcement efforts, the registrants of at least DRAMANICE.LA, RUNASIAN.NET, WATCHASIA.TO, and ASIANC.SH. advertise and promote their infringing activities through ASIANWIKI.CO and their social media accounts on X (formerly Twitter), Telegram, and Discord. (*Id.* at 11:38). The websites resolving from each of these domain names remain accessible, and the website associated with ASIANWIKI.CO was even updated as recently as September of 2024[3].

### III.  ARGUMENT

To be granted a temporary restraining order or preliminary injunction[4], the moving party "must establish that it is likely to succeed on the merits, it is likely to suffer irreparable harm in the absence of immediate relief, the balance of equities tips in its favor, and a TRO serves the public interest." *Buchanan Bros. Inc. v. A2Z Xtreme Airgun, LLC*, No. CV-23-01879-PHX-DLR, 2023 WL 6038159, at *2 (D. Az. Sept. 15, 2023). "These elements are balanced on a sliding scale, whereby a stronger showing of one element may offset a weaker showing of another." *Id*.

#### A.  wA is Likely to Succeed on its Copyright Infringement Claim and Contributory Copyright Claim

"To present a *prima facie* case of direct copyright infringement, a plaintiff must demonstrate: (1) ownership of the copyright at issue; (2) a violation of an exclusive right set forth in copyright, and (3) causation by the defendant; a plaintiff need not prove

---

[3] https://asianwiki.co/romance-in-the-house-ends-on-ratings-rise-beauty-and-mr-romantic-heads-into-final-week-at-no-1.html (last accessed September 15, 2024).

[4] "The standards for issuing a TRO are identical to those for issuing a preliminary injunction." *Buchanan Bros. Inc. v. A2Z Xtreme Airgun LLC*, No. CV-23-01879-PHX-DLR, 2023 WL 6038159 at *2 (D. Az. Sept. 15, 2023) (citing *Whitman v. Hawaiian Tug & Barge Corp./Young Bros., Ltd. Salaried Pension Plan*, 27 F.Supp.2d 1225, 1228 (D. Haw. 1998)).

1  damages." *Fornix Holdings LLC v. Unknown Party*, No. CV-22-01942-PHX-DJH, 2023
2  WL 4031961 at *2 (D. Az. June 15, 2023) (citing *Bell v. Wilmott Storage Servs., LLC*,
3  12 F.4th 1065, 1080 (9th Cir. 2021)).  However, when a right under a copyright has been
4  exclusively licensed, "only the exclusive licensee and not the original owner can sue for
5  infringement of those rights."  *Righthaven LLC v. Hoehn*, 716 F.3d 1166, 1170
6  (9th Cir. 2013).

7        The copyrighted Works at issue in this case are offered by wA through its Kocowa
8  service, and include works that are owned, *inter alia*, by the three largest Korean broadcast
9  networks—KBS, MBC, and SBS.  (Dkt. No. 1, 8:27.)  Exhibit I (Dkt. No. 1-4, pgs. 1–13)
10 to the Complaint lists a representative sample of the copyrighted Works illegally available
11 for viewing on the Domain Names and the DRAMACOOL APP, and where those same
12 Works are available, legitimately, via wA's KOCOWA® service. (Dkt. No. 1, 18:52); see,
13 e.g., *Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*, No. 16-CV-1318-
14 (GBD) (BCM), 2017 WL 696126 at *14 (S.D.N.Y. Feb. 15, 2017), *report and*
15 *recommendation adopted sub nom. Joint Stock Co. v. Infomir LLC*, No. 16 Civ. 1318 (GBD)
16 (BCM), 2017 WL 2988249 (S.D.N.Y. Mar. 27, 2017) ("Where a copyright claim is based
17 on the alleged wholesale infringement of a large number of copyrighted works ...
18 the plaintiff must [] identify, at a minimum, representative examples of the works
19 allegedly infringed....").

20       Defendants infringe upon Plaintiff's exclusive rights in the copyrighted Works by
21 doing exactly what Plaintiff does through its KOCOWA® service, albeit without
22 authorization.  (Dkt. No. 1, 9:33–14:44).  That is, Defendants distribute (*i.e.*, stream)
23 unauthorized copies of the copyrighted Works over the Internet to viewers in the United
24 States via their respective Domain Names and the DRAMACOOL APP.  (*Id.*).

25       Additionally, wA is likely to succeed on its contributory infringement claim against
26 the unknown registrant of ASIANWIKI.CO.  A defendant "contributorily infringes when
27 he (1) has knowledge of another's infringement and (2) either (a) materially contributes to
28 or (b) induces that infringement."  *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788,

1  795 (9th Cir. 2007) (internal quotations omitted). "Traditionally, one who, with knowledge
2  of the infringing activity, induces, causes or materially contributes to the infringing conduct
3  of another, may be held liable as a contributory' infringer … [p]ut differently, liability exists
4  if the defendant engages in personal conduct that encourages or assists the infringement."
5  *A&M Recs., Inc. v. Napster, Inc.*, 239 F.3d 1004, 1019 (9th Cir. 2001)
6  (internal quotations omitted).

   As to the first requirement, on information and belief, the registrant(s) of at least DRAMANICE.LA, RUNASIAN.NET, WATCHASIA.TO, and ASIANC.SH are believed to be the same person or entity, or are part of the same organization working together under the tradename "DRAMACOOL," reproduced as FIG A below. (Dkt. No. 1, 10:37–12:38; Dkt. No. 1-3 [Exs. H-2, H-3, H-4 and H-5]). For example, all of the websites associated with these domain names are advertised and promoted on ASIANWIKI.CO and the same social media page, and a majority of them are of a similar appearance and layout. (*Id.*). Thus, it is presently understood that at least DRAMANICE.LA, RUNASIAN.NET, WATCHASIA.TO, ASIANC.SH, and ASIANWIKI.CO are owned or operated by the same individual(s) or organization(s), such that they would implicitly have knowledge of the infringements occurring on each of these Domain Names. (*Id.*).



*FIG. A*

   As to the second requirement, the registrant of ASIANWIKI.CO has taken affirmative steps to encourage, assist, increase traffic to, and frustrate enforcement efforts against the infringements occurring at DRAMANICE.LA, RUNASIAN.NET, WATCHASIA.TO, and ASIANC.SH. (Dkt. No. 1, 12:38). As explained above, and in detail within wA's Complaint, the website associated with ASIANWIKI.CO is used to update viewers with the specific links to at least DRAMANICE.LA, RUNASIAN.NET, WATCHASIA.TO, and ASIANC.SH. (*Id.*). In fact, an announcement posted to ASIANWIKI.CO on October 9, 2023 specifically advertises access to DRAMANICE.LA,

RUNASIAN.NET, and WATCHASIA.TO, and even tells its users to "[c]hoose one [link to infringing domain name] which suits you best," and that "we will fix the issue ASAP" presumably if access to these domain names is lost. (*Id.* at FIG. A).

### 1. The Copyrighted Works Need Not Be Registered

Although United States works must be registered with the U.S. Copyright Office before an infringement action can commence, "the Berne Convention Implementation Act, 17 U.S.C. §§ 101, et seq., 'allows owners of unregistered foreign copyrights from Berne Convention signatory nations to bring claims of copyright infringement in United States courts.'" *Liaigre, Inc. v. Cal. Furniture Collection, Inc.,* No. SA CV19-01160 JAK (KESx), 2022 WL 18278600 at *7 (C.D. Cal. Oct. 6, 2022) (quoting *MPD Accessories B.V. v. Urban Outfitters*, No. 12 CIV. 6501 (LTS)(KNF), 2014 WL 2440683 at *5 (S.D.N.Y. May 30, 2014)). Each of the copyrighted Works is broadcast and publicly displayed in Korea by the respective copyright owner before it is distributed in the United States. (Dkt. No. 1, 8:29). Further, Korea has been a party to the Berne Convention since August 21, 1996. (*Id.* at 22:73). As such, the copyrighted Works are not United States works and are not subject to the registration requirements of 17 U.S.C. § 411(a). *See Crunchyroll, Inc. v. Pledge*, Case No. C 11-2334 SBA, 2014 WL 1347492 at *16 (N.D. Cal. Mar. 31, 2014) (television episodes first broadcast in Japan were not "United States work" and need not be registered).

### 2. wA Has Standing

"[T]o have standing to bring a copyright infringement claim, 'the plaintiff must have a legal or beneficial interest in at least one of the exclusive rights described in § 106,' and 'the infringement must be committed while he or she is the owner of the particular exclusive right allegedly infringed.'" *Crunchyroll*, 2014 WL 1347492 at *13 (quoting *Silvers v. Sony Pictures Entm't, Inc.*, 402 F.3d 881, 885 (9th Cir. 2005) (en banc) (quoting 17 U.S.C. § 501(b)). The Copyright Act permits that the "exclusive rights may be chopped up an[d] owned separately, and each separate owner of a subdivided exclusive right may sue to enforce that owned portion of an exclusive right." *Id.* at *14 (quoting *Silvers*, 402 F.3d at 886–87). Such a transfer in ownership must be something other than a nonexclusive license

and must be "in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent." *Id.* at *14 (quoting 17 U.S.C. §204(a)). "[T]here is no requirement for any 'magic words'" in the writing, however. *Id.* (quoting *Radio Television Espanola S.A. v. New World Entm't, Ltd.*, 183 F.3d 922, 927 (9th Cir. 1999)).

Relevant portions of a representative sample of license agreements with KBS and SBS granting wA exclusive rights in certain ones of the copyrighted Works, including the exclusive grant of content distribution and transmission business rights in the United States, are attached as Exhibit G (Dkt. No. 1-3) to the Complaint (*see, e.g.*, Ex. G-1 [Dkt. No. 1-3, pgs. 2–8] (license agreement between wA and KBS stating, in part, that KBS grants to wA, in the UCAN[5] territory, the "exclusive rights to distribute, transmit and exploit the Program via streaming and/or any other means of digital distribution by means of an IP-based transmission path...")[6].

Nevertheless, even if these writings are deemed insufficiently specific, Plaintiff should not be precluded from establishing standing in this case. Plaintiff is a corporation that is owned and controlled, in part, by each of the three copyright owners—KBS, MBC, and SBS. (Dkt. No. 1, 8:27). Further, each of KBS, MBC, and SBS has at least one member on wA's Board of Directors and expressly authorized Plaintiff to bring this suit. (Declaration of Jeongphil "JP" Joo, ¶ 8). Accordingly, there is no dispute between Plaintiff and the copyright owners, KBS, MBC, and SBS, as to the validity of the transfer of exclusive rights to Plaintiff.

The Ninth Circuit has stated that "in situations 'in which the copyright holder appears to have no dispute with its licensee on [the issue of transfer], it would be anomalous to permit a third party infringer to invoke this provision against the licensee'." *Crunchyroll*, 2014 WL 1347492 at *14 (quoting *Radio Television Espanola*, 183 F.3d at 929) (alteration in original). Thus, even if the writings are deemed insufficient, such a finding should not

---

[5] "UCAN" refers to the United States and Canada. (Dkt. No. 1-3, pgs. 2–8).
[6] The license agreement includes an "exception of KBS World linear TV channels including Catch-up service." (*Id.*). Linear TV refers to traditional broadcast and cable-provided programming and is different from an "IP-based transmission path," such as the OTT services over an Internet (IP) connection used by wA's KOCOWA® service and the Domain Names.

1  preclude Plaintiff from asserting the copyright infringement claim since the copyright
2  owners are each a stockholder of Plaintiff and expressly authorized this litigation.
3  *See Crunchyroll*, 2014 WL 1347492 at *14 (permitting an exclusive licensee to maintain a
4  copyright infringement claim despite a lack of any writing evidencing the purported transfer
5  of rights).

6  Lastly, "[a]s a general matter, the law of the jurisdiction where an artistic work is
7  created and first published governs issues concerning copyright ownership."
8  *Liaigre,* 2022 WL 18278600 at *7 (internal quotations and citations omitted). Here, Korean
9  copyright law would govern any issue regarding copyright ownership. As at least one other
10 court has found that an exclusive transfer of distribution rights is permitted under Korean
11 copyright law. *See Seoul Broadcasting Sys. Int'l, Inc. v. Young Min Ro*, 784 F. Supp. 2d.
12 611, 616 (E.D. Va. 2011) (citing *Korean Copyright Act*, Articles 45–47 and 53–55)
13 ("The Korean parent networks, in turn, then assigned to their United States affiliates, the
14 plaintiffs in this case, all rights to distribute and rebroadcast the works in the United States.
15 Under Korean copyright law, such transfers or assignments of copyrights are valid and fully
16 enforceable, and plaintiffs have therefore adequately established standing to sue as a matter
17 of law.") (internal citations omitted). As such, the exclusive right to distribute the
18 copyrighted Works in the United States was properly and validly transferred from the
19 copyright owners to Plaintiff under Korean copyright law.

20 Thus, Plaintiff has standing to bring its copyright infringement claims against each
21 and every one of the Defendants.

22 **3.    United States Copyright Law Is Applicable To Defendants' Acts**

23 While "United States copyright laws do not reach acts of infringement that take place
24 entirely abroad," here, the infringement may begin abroad but culminates in the United
25 States when the infringing shows are viewed by any number of individuals. Such
26 infringement is not "wholly extraterritorial" as it is specifically directed to viewers in the
27 United States and culminates in the United States, rendering the application of United States
28 copyright law against Defendant proper. *See Crunchyroll*, 2014 WL 1347492 at *17

(finding acts resulting in viewing of copyrighted works by individuals in the United States sufficient to find the infringing conduct not "wholly extraterritorial"); *Sound N Light Animatronics Co., Ltd. v. Cloud B, Inc.*, No. CV 16-05271-BRO (JPR), 2017 WL 3081685 at *7 (C.D. Cal. Apr. 7, 2017) (finding application of U.S. copyright law appropriate where the defendant's "allegedly infringing products, although manufactured in China, reached consumers in the United States"); *Spanski Enters., Inc. v. Telewizja Polska, S.A.*, 883 F.3d 904, 915 (D.C. Cir. 2018) (holding application of U.S. copyright law proper because, *inter alia*, "Congress had good reason to allow domestic copyright holders to enforce their rights against foreign broadcasters who direct infringing performances into the United States ... [because] a statutory scheme that affords copyright holders no protection from such broadcasters would leave the door open to widespread infringement…"). Further, each of the Domain Names utilizes Cloudflare's North American Content Delivery Network (CDN), which specifically provides faster and more reliable viewing to individuals located in the United States. (Dkt. No. 1, 18:58); *Will Co., Ltd. v. Lee*, 47 F.4th 917, 924 (9th Cir. 2022) (finding that "by choosing to host ThisAV.com in Utah and to purchase CDN services for North America, Defendants chose to have the site load faster for viewers in the United States and slower for viewers in other places around the world ... Defendants' choice is good evidence that they were motivated to appeal to viewers in the United States more than any other geographical location."). Similarly, the DRAMACOOL APP is available for download in the United States through the Apple App Store and offers infringing content to users through the DRAMACOOL APP once downloaded. (*Id.* at 18:59).

### B. Defendants' Infringement Creates Presumptive and Real Irreparable Harm to wA and Consumers

Plaintiff has and continues to suffer irreparable injury because Defendants have been and continue to infringe Plaintiff's exclusive rights to distribute the copyrighted Works in the United States. Further, Plaintiff's business relies on the licensing of Korea-originating copyrighted Works from their Korean owners for distribution to subscribers of its

KOCOWA® service in the United States. (Dkt. No. 1, 9:32). Defendants, by infringing Plaintiff's exclusive rights in the copyrighted Works by offering them to anyone in the United States free of charge, are directly undercutting Plaintiff's business model and risks Plaintiff's future success. (JP Decl. ¶¶ 6–7; Kellar Decl. ¶¶ 14–16). Lastly, Defendants' conduct is contrary to the law, and "the public interest is not disserved by prohibiting Defendant from engaging in conduct contrary to law." *Nicklaus Cos. LLC v. Bryan Hepler Golf LLC*, No. CV-18-01748-PHX-ROS, 2019 WL 1227198 at *1 (D. Az. March 15, 2019).

### C. The Balance of Hardships Tips Sharply in wA's Favor

wA seeks to have each of the Domain Names that facilitate Defendants' infringement disabled and locked for the pendency of this litigation. Because the DRAMACOOL APP and the webpages resolving from Defendants' respective Domain Names do not purport to serve any legitimate, *i.e.*, non-infringing, purpose, or at least any legitimate purpose that outweighs the illegitimate purpose in widespread infringement of Plaintiff's exclusive rights in the copyrighted Works, Defendants will not be harmed by the loss of any ill-gotten gains from their Domain Names. *See Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 867 (9th Cir. 2017) (discussing "the long-settled principle that harm caused by illegal conduct does not merit significant equitable protection"). Without a temporary restraining order, Defendants will continue to receive ill-gotten gains from the infringements of Plaintiff's exclusive rights while causing irreparable harm to wA's goodwill and business interests by offering the same programming available on a subscription basis on wA's KOCOWA® service for free via their respective Domain Names.

### D. Public Interest Favors Entry of a Temporary Restraining Order

"[T]he public has a compelling interest in protecting copyright owners' marketable rights to their work and the economic incentive to continue creating television programming and motion pictures." *Disney Enters.*, 869 F.3d at 867 (citations and internal quotations omitted). Defendants' infringement of the copyrighted Works available at the Domain Names and the DRAMACOOL APP is "good for nothing else" but copyright infringement, and "there is no legitimate public interest in its [copyrighted Works] unlicensed

availability." *MGM Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 932 (2005). As such, there is no public harm in and, indeed, public interest favors, prohibiting Defendants' infringing conduct by disabling the Domain Names for the pendency of this litigation.

### E. *Ex Parte* Relief Is Warranted Without Security

The issuance of an *ex parte* temporary restraining order may be appropriate "where notice to the adverse party is impossible either because the identity of the adverse party is unknown or because a known party cannot be located in time for a hearing." *Reno Air Racing Ass'n., Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006) (citations omitted). Even if Notice could be given to Defendants, "courts have recognized 'a very narrow band of cases in which ex parte orders are proper because notice to the defendant would render fruitless the further prosecution of the action.' " *Id.* (quoting *Am. Can Co. v. Mansukhani*, 742 F.2d 314, 322 (7th Cir. 1984)). These circumstances are present here[7].

As to the registrants of DRAMANICE.LA, RUNASIAN.NET, WATCHASIA.TO, ASIANWIKI.CO, DRAMACOOL.BG, DRAMACOOL.COM.TR, DRAMACOOL.COM.VC, DRAMACOOL9.CO, DRAMACOOL.TR, DRAMACOOL.CO.BA, and DRAMACOOL.BA, none of these Defendants have provided any verifiable identifying information on the webpages associated with these infringing Domain Names. (Kellar Decl., ¶¶ 5–11.) Moreover, it is impossible for wA to provide notice to those Defendants for whom it does not have any contact information. (*Id.*; Dkt. No. 1, 5:12–8:26); see *Whaleco Inc. v. dltemuapp.com*, No. CV-23-02332-PHX-SPL, 2023 WL 7413670, at *3 (D. Ariz. Nov. 9, 2023) (finding that requirements for *ex parte* TRO were satisfied where Defendants' identities were protected by Namecheap); *Talavera Hair Prods., Inc. v. Taizhou Yunsung Elec. Appliance Co., LTD*, 2018 WL 3413866, at *3 (S.D. Cal. May 10, 2018) (granting *ex parte* TRO).

---

[7] A party seeking an *ex parte* temporary restraining order "must comply with Federal Rule of Civil Procedure 65(b)(1) by (1) substantiating its allegations of irreparable harm with an affidavit or verified complaint and (2) certifying in writing any efforts made to give notice to the non-moving parties, and why notice should not be required." *Boyko v. Kondratiev*, No. CV-23-01186-PHX-DLR, 2023 WL 5017198, at *3 (D. Ariz. July 14, 2023). These requirements are satisfied by Plaintiff's Complaint, the Declaration of JP Joo, and the Declaration of Kyle W. Kellar attached hereto.

Additionally, only the identities of the registrants of ASIANC.SH and DRAMACOOL.COM.SO, and the developer of the DRAMACOOL APP have been identified to date, based on publicly available information.[8] However, service to even these Defendants is impracticable, if not impossible. As to Defendant Asian C., his only available address is merely listed as "Pathum Wan" in the city of Pathum, Thailand. (Dkt. No. 1, 6:17; Dkt. No. 1-1, pgs. 16–20 [Ex. A-4]). However, "Pathum Wan" is not a valid address to which service can be made but is apparently an entire neighborhood. (Kellar Decl., ¶ 7).

Further, as to Defendant Najeeb Ullah, only this registrant's country, Pakistan, has been identified in the publicly available WHOIS information for DRAMACOOL.COM.SO. (Dkt. No. 1, 7:21; Dkt. No. 1-1, pgs. 32–43 [Ex. A-8]). Accordingly, service cannot be made because no further details regarding this registrant's address have been made publicly available. (*Id.*; Kellar Decl., ¶ 8). Similarly, as to Defendant Minh Van Ngoc Mym, his address is not identified on the App Store, and has not been publicly or privately disclosed by Apple. (Dkt. No. 1-1, pgs. 58–60 [Ex. A-14]; Kellar Decl., ¶¶ 12–13).

Moreover, as the Unknown Registrants of DRAMANICE.LA, RUNASIAN.NET, WATCHASIA.TO, and ASIANC.SH have already shown, Defendants can simply move the infringing content to a virtually identical domain name albeit with a different Country code top-level domain (ccTLDs) to evade enforcement, and advertise these new domain names via ASIANWIKI.CO and their social media pages. (Dkt. No. 1, 15:45–16:47). There is a substantial likelihood that advance notice of this action, before the Domain Names are disabled and placed on registry hold, may cause the Defendants to similarly move the infringing content to altered versions of the Domain Names and provide them time to inform users of the new domain name before the Court and or any registrar could act, rendering further prosecution of this action fruitless. (*Id.*; Kellar Decl., ¶¶ 14–16). Even the developer of the DRAMACOOL APP can temporarily disable access to infringing

---

[8] The identities of the registrants of ASIANC.SH and DRAMACOOL.COM.SO have been identified in their respective publicly available WHOIS records, while the developer of the DRAMACOOL APP is identified on its publicly available download page on Apple's App Store. (Dkt. No. 1, 6:17, 7:21, 8:26).

content on the application, and resume access whenever it so chooses, or simply move the infringing content to a new digital application on the same App Store.  (*Id.* at 16:48; Kellar Decl., ¶ 15).

An *ex parte* temporary restraining order, therefore, prevents further injury to wA and to the public, until the Court can hold a preliminary injunction hearing as is necessary and proper.  See Order Granting *Ex Parte* Emergency Motion for Temporary Restraining Order, *Zuffa, LLC v. ufcfightpass.net*, No. 2:20-cv-02336-JJT, (D. Ariz. Dec. 11, 2020), Dkt. 11 at 2[9] (granting *ex parte* TRO where failure to do so "would cause [plaintiff] to suffer and incur additional expense in having to file additional lawsuit(s) if the domain name were to be transferred to other registrants during the pendency of this action"); Order re Ex Parte Application for Temporary Restraining Order, *Whaleco Inc. v. Temuds.com et. al*, No. 3:23-cv-00367-CRB, (N.D. Cal. Feb. 6, 2023), Dkt. 17 at 2[10].

Tellingly, no Defendant that was contacted responded to wA's demands to cease infringing activity, and each Defendant continues to offer the infringing copyrighted Works through their respective domain name and the DRAMACOOL APP.  (Dkt. No 1, 19:61–22:70).  Defendants have shown no intent to stop their infringement of the copyrighted Works.  Any notice to Defendants is likely to frustrate Plaintiff's efforts to enforce its rights and render further prosecution of this action fruitless because the infringements will have moved on to new domain names, requiring an endless amendment of operative pleading. (Kellar Decl., ¶¶ 14–16).  wA will be left with no recourse for Defendants' infringing conduct, unless this Court orders that the infringing Domain Names be placed on hold and locked and that any associated webpages be disabled, and the DRAMACOOL APP be disabled and removed from the App Store.

Although Fed. R. Civ. Proc. 65(c) requires Plaintiff to give security, District courts retain the discretion to set the bond amount as it sees fit or waive the security requirement. *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) ("[t]he district court may dispense

---

[9] Attached as Exhibit A to the Kellar Decl.
[10] Attached as Exhibit B to the Kellar Decl.

126119779.2                                 - 14 -

with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct.") (citing *Barahona-Gomez v. Reno*, 167 F.3d 1228, 1237 (9th Cir. 1999)).  The circumstances of this case merit waiver of any such security by Plaintiff.  Not only is Plaintiff likely to prevail on its copyright infringement claim, but Defendants cannot claim to be harmed by precluding their ongoing and willful infringement.  Alternatively, because Defendants cannot claim hardship by being precluded from continuing infringing Plaintiff's copyrights, a minimal security in the amount of $100 is appropriate.

### IV.   CONCLUSION

For the foregoing reasons, wA respectfully requests that the Court enter an order in the form of the [Proposed] *Ex Parte* Temporary Restraining Order accompanying this Motion.

DATED this 9th day of October, 2024.

>
> Respectfully submitted,
>
> LEWIS ROCA ROTHGERBER
> CHRISTIE LLP
>
> By:   *s/Kyle W. Kellar*
>         Kyle W. Kellar
>         Ryan D. Pont
>
> *Attorneys for Plaintiff wavve Americas, Inc.*